IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

DEBRA TAYLOR, :

    Plaintiff, :

vs. : CA 16-0374-C

NANCY A. BERRYHILL, :
Acting Commissioner of Social Security,[1]
                                                                                         :

    Defendant.

**MEMORANDUM OPINION AND ORDER**

Plaintiff brings this action, pursuant to 42 U.S.C. § 405(g), seeking judicial review of a final decision of the Commissioner of Social Security denying her claims for a period of disability, disability insurance benefits, and widow's insurance benefits. The parties have consented to the exercise of jurisdiction by the Magistrate Judge, pursuant to 28 U.S.C. § 636(c), for all proceedings in this Court. (Docs. 17 & 19 ("In accordance with the provisions of 28 U.S.C. 636(c) and Fed.R.Civ.P. 73, the parties in this case consent to have a United States Magistrate Judge conduct any and all proceedings in this case, . . . order the entry of a final judgment, and conduct all post-judgment proceedings.").) Upon consideration of the administrative record, plaintiff's brief, the Commissioner's brief, and the arguments of the parties at the February 22, 2017 hearing before the Court, it is determined that the Commissioner's decision denying benefits

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 23, 2017. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Berryhill is substituted for Carolyn W. Colvin as the proper defendant in this case.

should be reversed and remanded for further proceedings not inconsistent with this decision.[2]

Plaintiff alleges disability due to osteoarthritis of the knees, obesity, and chronic pain. The Administrative Law Judge (ALJ) made the following relevant findings:

> **1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2018.**
>
> **2. It was previously found that the claimant is the unmarried widow of the deceased insured worker and has attained the age of 50. The claimant met the non-disability requirements for disabled widow's benefits set forth in section 202(e) of the Social Security Act.**
>
> **3. The prescribed period ends on November 30, 2015.**
>
> **4. The claimant has not engaged in substantial gainful activity since April 19, 2013, the alleged onset date (20 CFR 404.1571 *et seq*.).**
>
> . . .
>
> **5. The claimant has the following severe impairments: osteoarthritis of the bilateral knees; obesity; and[] chronic pain (20 CFR 404.1520(c)).**
>
> . . .
>
> **6. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).**
>
> . . .
>
> **7. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that she has the following exertional and non-exertional limitations that reduce her capacity to perform the full range of light work: She would require an**

---

[2] Any appeal taken from this memorandum opinion and order and judgment shall be made to the Eleventh Circuit Court of Appeals. (*See* Docs. 17 & 19 ("An appeal from a judgment entered by a Magistrate Judge shall be taken directly to the United States Court of Appeals for this judicial circuit in the same manner as an appeal from any other judgment of this district court."))

**at-will sit/stand option with the retained ability to stay on or at a work station in no less than thirty minute increments, each, without significant reduction of remaining on task; could ambulate short distances of up to 50 yards per instance on flat, hard surfaces with the occasional use of a single-hand assistive walking device; could frequently use foot controls; could occasionally climb ramps and stairs, but never ladders and scaffolds; could frequently balance and stoop; never kneel, crouch, or crawl; should never be exposed to unprotected heights or extreme cold, could tolerate occasional exposure to humidity, wetness, extreme heat, and workplace vibrations; and, in addition to normal breaks, would be off task approximately 5% of a normal workday in non-consecutive minutes.**

In making this finding, the undersigned has considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSRs 96-4p and 96-7p. The undersigned has also considered opinion evidence in accordance with the requirements of 20 CFR 404.1527 and SSRs 96-2p, 96-5p, 96-6p and 06-3p.

In considering the claimant's symptoms, the undersigned must follow a two-step process in which it must first be determined whether there is an underlying medically determinable physical or mental impairment(s)— i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the claimant's pain or other symptoms.

Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the claimant's pain or other symptoms has been shown, the undersigned must evaluate the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit the claimant's functioning. For this purpose, whenever statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the undersigned must make a finding on the credibility of the statements based on a consideration of the entire case record.

After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.

The claimant testified that she has experienced knee pain for at least ten years, but that it has gotten worse and that she is now unable to work due to pain. She reported that she has a cane issued by the Veteran's Administration and that she uses it when the pain flares-up. She reported that she is unable to perform household chores or yard work or go grocery

shopping, but that she can prepare meals. She reported that she has a friend [who] does her grocery shopping and that her sons and stepdaughter perform household chores.

She reported that she can stand for no more than ten minutes, walk about 100 feet before she has to sit down and rest; and sit for about twenty minutes before she has to get up. She reported that she cannot bend. She related that her pain averaged an eight on a scale of zero to ten.

As explained by the U.S. Department of Health and Human Services, BMI, or body mass index, is a measure of body fat based on height and weight that applies to adult men and women. A BMI of less than 18.5 is considered "underweight;" a BMI of 18.5-24.9 is considered "normal;" a BMI of 25-29.9 is considered "overweight;" and a BMI of 30 or greater is considered "obesity." According to the medical evidence, the claimant's body mass index was a 42.4 in January 2013. Her body mass index was 43 in July 2013. Her body mass index in July 2014 was over 45. The claimant's obesity reduces her ability to sit, stand, and maintain certain postural positions. Accordingly, the claimant's obesity, in combination with her other impairments, warrants a reduction in capacity to work at light exertional range with some further appropriate work restrictions.

The medical evidence of record does not wholly support the degree of limitations alleged by the claimant. An April 2012 treatment note documents that the claimant's bilateral knee pain was assessed and that it had remained the same. In September 2012 the claimant reported swelling in her knees to her primary care physician, and physical examination found crepitus of both knees with motion. Her doctor diagnosed her with osteoarthritis. In October 2012, the claimant told her physician that her knees were giving her some trouble, and she was diagnosed with degenerative joint disease. However, *her doctor noted that she was "doing reasonably well with [the] present regimen*[.]"

In January 2013, the claimant complained of bilateral knee pain to her primary care physician. The physical examination found tenderness to palpitation and mild crepitus with range of motion, and x-rays showed severe degenerative joint disease. A March 2013 treatment note documents that the claimant has a history of chronic knee pain and presented complaining of bilateral knee pain for three days after lifting. In April 2013, the claimant again reported bilateral knee pain, and the physical examination found diffuse swelling and tenderness to palpitation over the medial aspect of the bilateral knees, but full range of motion. At that time, she was diagnosed with bilateral knee pain and given an injection of Toradol. In September 2013, the claimant reported that it felt like it was bone-on-bone in her knees and that she could not walk because of the pain. In July 2013, the claimant complained of bilateral knee pain to Maurice Fitz-Gerald, M.D. Upon physical examination, he noted that the claimant's knees were markedly hypertrophied and that x-rays showed "severe osteoarthritic changes." In November 2013, the claimant was

4

evaluated by a certified registered nurse practitioner ("CRNP") who noted that the claimant appeared uncomfortable and that there was crepitus of both knees. The claimant reported that Tramadol and Naproxen were not working anymore, and she was prescribed Meloxicam and Lortab. The CRNP also recommended that the claimant get a stationary bike or do yoga or tai chi at home. She also recommended a consultation for knee replacements, but the claimant declined to go because her husband was in a long-term health facility.

In March 2014, the claimant saw her primary care physician and reported that her knees had gotten worse over the last eight months and that she had been using a walker at night when she needed to go to the bathroom. However, she also reported that she had ordered a treadmill to exercise and that "she [did] not feel that she [was] ready for the cane [because] it may make her 'old looking.'" Knee x-rays showed joint space narrowing with osteoarthritis. The claimant was given an injection and told that she needed consistent exercise 30 minutes a day. Later that month, the claimant was issued a cane by a kinesiotherapist at the Tuscaloosa VA Hospital. During the evaluation, the claimant reported that she had knee pain that she rated as a 10 on a scale of 0 to 10. However, the record documents that the claimant walked into the clinic independently without an assistive device. In May 2014, the claimant received an injection of Decadron, Depo-Medrol, and Norflex. The claimant testified at the hearing that she was unable to undergo knee replacement surgery because she did not have anyone to help her recover from the procedure. However, based on her earlier testimony, it seems she has a solid support network of friends and family.

In July 2013, Benjamin Hinton, M.D., completed a consultative physical examination of the claimant at the request of Disability Determination Service. The claimant told Dr. Hinton that she was able to dress and feed herself and that she was able to stand or sit for about 10 minutes at a time and walk about 100 yards on level ground. She also reported that she was able to drive, but that she had difficulty with sweeping, mopping, vacuuming, cooking, doing dishes, shopping, climbing stairs, and mowing the grass. Upon physical examination, the claimant's gait was normal and the claimant was able to get on and off the examination table without difficulty and up and out of her chair without difficulty. The claimant was able to walk on her heels and toes and squat. Dr. Hinton felt that no assistive device was needed. She had knee crepitus that was palpable bilaterally as well as tenderness to palpitation upon firm pressure bilaterally. Dr. Hinton's impression was bilateral knee osteoarthritis, and he opined that the claimant had mild to moderate limitation in areas such as walking and that she was currently capable of light work, but that she would be able to perform more vigorous work if she underwent bilateral knee arthroplasty. The undersigned gives Dr. Hinton's opinions good weight because they are consistent with his examination findings and the totality of the evidence.

> In sum, the residual functional capacity is supported by Dr. Hinton's opinions and the totality of the medical evidence.
>
> **8. The claimant is capable of performing past relevant work as a Case Manager and Family Support Worker. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).**
>
> The claimant has past relevant work as a Case Manager and a Family Support Worker. At the hearing, the undersigned asked the vocational expert to classify this work. The vocational expert testified that according to the Dictionary of Occupational Titles (DOT) these jobs are classified as Case Manager (DOT 195.107-010) which is a sedentary exertion, skilled job with a specific vocational preparation of 7 and Family Support Worker (DOT 195.167-014) which is a sedentary exertion, skilled job with a specific vocational preparation of 7. The undersigned also asked the vocational expert whether an individual of the same age that had the same educational level, past relevant work, and residual functional capacity as the claimant could perform the claimant's past relevant work. The vocational expert testified that such an individual could perform the jobs of Case Manager and a Family Support Worker as actually performed and as generally performed. Moreover, pursuant to SSR 00-4p, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles. Accordingly, the undersigned finds that the claimant is capable of performing her past relevant work as a Case Manager and a Family Support Worker as actually performed and as generally performed.
>
> **9. The claimant has not been under a disability, as defined in the Social Security Act, from April 19, 2013, through the date of this decision (20 CFR 404.1520(g)).**

(Tr. 21, 22, 23, & 23-27 (internal citations omitted; emphasis in original).) The Appeals Council affirmed the ALJ's decision (Tr. 1-3) and thus, the hearing decision became the final decision of the Commissioner of Social Security.

## **DISCUSSION**

In all Social Security cases, an ALJ utilizes a five-step sequential evaluation

> to determine whether the claimant is disabled, which considers: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment; (3) if so, whether the severe impairment meets or equals an impairment in the Listing of Impairments in the regulations; (4) if not, whether the claimant has the RFC to perform her past relevant work; and (5) if not, whether, in light of

the claimant's RFC, age, education and work experience, there are other jobs the claimant can perform.

*Watkins v. Commissioner of Social Sec.*, 457 Fed. Appx. 868, 870 (11th Cir. Feb. 9, 2012)[3] (per curiam) (citing 20 C.F.R. §§ 404.1520(a)(4), (c)-(f), 416.920(a)(4), (c)-(f); *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004)) (footnote omitted). The claimant bears the burden, at the fourth step, of proving that he is unable to perform his previous work. *Jones v. Bowen*, 810 F.2d 1001 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors:  (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education and work history. *Id.* at 1005. Although "a claimant bears the burden of demonstrating an inability to return to his past relevant work, the [Commissioner of Social Security] has an obligation to develop a full and fair record." *Schnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987) (citations omitted). If a plaintiff proves that he cannot perform his past relevant work, as here, it then becomes the Commissioner's burden—at the fifth step—to prove that the plaintiff is capable— given his age, education, and work history—of engaging in another kind of substantial gainful employment that exists in the national economy. *Phillips, supra,* 357 F.3d at 1237; *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999), *cert. denied,* 529 U.S. 1089, 120 S.Ct. 1723, 146 L.Ed.2d 644 (2000); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985).

The task for the Magistrate Judge is to determine whether the Commissioner's decision to deny claimant benefits, on the basis that she can perform a reduced range of light work and, therefore, her past relevant sedentary work as a case manager and family support worker, is supported by substantial evidence. Substantial evidence is

---

[3] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir.R. 36-2.

defined as more than a scintilla and means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). "In determining whether substantial evidence exists, we must view the record as a whole, taking into account evidence favorable as well as unfavorable to the Commissioner's] decision." *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986).[4] Courts are precluded, however, from "deciding the facts anew or re-weighing the evidence." *Davison v. Astrue*, 370 Fed. Appx. 995, 996 (11th Cir. Apr. 1, 2010) (per curiam) (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). And, "'[e]ven if the evidence preponderates against the Commissioner's findings, [a court] must affirm if the decision reached is supported by substantial evidence.'" *Id.* (quoting *Crawford v. Commissioner of Social Security*, 363 F.3d 1155, 1158-1159 (11th Cir. 2004)).

In this case, the plaintiff contends that the following errors were committed in this case: (1) the ALJ's decision is not supported by objective evidence or any substantial evidence;[5] and (2) the ALJ failed to properly apply the pain standard.[6]

These arguments require the Court to set forth the proper analysis for consideration of RFC "issues" raised in cases like the instant one. Initially, the Court notes that the responsibility for making the residual functional capacity determination rests with the ALJ. *Compare* 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level . . ., the administrative law judge . . . is responsible for assessing

---

[4] This Court's review of the Commissioner's application of legal principles, however, is plenary. *Walker v. Bowen*, 826 F.2d 996, 999 (11th Cir. 1987).

[5] Based upon the "contents" of this assignment of error (*see* Doc. 14, at 4-5), it is clear that plaintiff is "targeting" the ALJ's RFC assessment.

[6] Although plaintiff's counsel argued during the course of the February 22, 2017 hearing that plaintiff "grids out," and later filed a short supplemental brief (*see* Doc. 20), this argument is unavailing and plays no part in this Court's decision.

your residual functional capacity.") *with, e.g., Packer v. Commissioner, Social Security Admin.*, 542 Fed. Appx. 890, 891-892 (11th Cir. Oct. 29, 2013) (per curiam) ("An RFC determination is an assessment, based on all relevant evidence, of a claimant's remaining ability to do work despite her impairments. There is no rigid requirement that the ALJ specifically refer to every piece of evidence, so long as the ALJ's decision is not a broad rejection, i.e., where the ALJ does not provide enough reasoning for a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (internal citation omitted)). A plaintiff's RFC—which "includes physical abilities, such as sitting, standing or walking, and mental abilities, such as the ability to understand, remember and carry out instructions or to respond appropriately to supervision, co-workers and work pressure[]"—"is a[n] [] assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." *Watkins v. Commissioner of Social Security*, 457 Fed. Appx. 868, 870 n.5 (11th Cir. Feb. 9, 2012) (citing 20 C.F.R. §§ 404.1545(a)-(c), 416.945(a)-(c)); *see also* 20 C.F.R. § 404.1545(a)(3) (in assessing RFC, the Commissioner is required to consider "descriptions and observations of [the claimant's] limitations from [] impairments, including limitations that result from [] symptoms, such as pain, provided by [the claimant] . . . .").

To find that an ALJ's RFC determination is supported by substantial evidence, it must be shown that the ALJ has "'provide[d] a sufficient rationale to link'" substantial record evidence "'to the legal conclusions reached.'" *Ricks v. Astrue*, 2012 WL 1020428, *9 (M.D. Fla. Mar. 27, 2012) (quoting *Russ v. Barnhart*, 363 F. Supp. 2d 1345, 1347 (M.D. Fla. 2005)); *compare id. with Packer v. Astrue*, 2013 WL 593497, *4 (S.D. Ala. Feb. 14, 2013) ("'[T]he ALJ must link the RFC assessment to specific evidence in the record bearing upon the claimant's ability to perform the physical, mental, sensory, and other

9

requirements of work.'"), *aff'd*, 542 Fed. Appx. 890 (11th Cir. Oct. 29, 2013); *see also Hanna v. Astrue*, 395 Fed. Appx. 634, 636 (11th Cir. Sept. 9, 2010) (per curiam) ("The ALJ must state the grounds for his decision with clarity to enable us to conduct meaningful review. . . . Absent such explanation, it is unclear whether substantial evidence supported the ALJ's findings; and the decision does not provide a meaningful basis upon which we can review [a plaintiff's] case." (internal citation omitted)).[7] However, in order to find the ALJ's RFC assessment supported by substantial evidence, it is not necessary for the ALJ's assessment to be supported by the assessment of an examining or treating physician. *See, e.g., Packer, supra,* 2013 WL 593497, at *3 ("[N]umerous court have upheld ALJs' RFC determinations notwithstanding the absence of an assessment performed by an examining or treating physician."); *McMillian v. Astrue*, 2012 WL 1565624, *4 n.5 (S.D. Ala. May 1, 2012) (noting that decisions of this Court "in which a matter is remanded to the Commissioner because the ALJ's RFC determination was not supported by substantial and tangible evidence still accurately reflect the view of this

---

[7] It is the ALJ's (or, in some cases, the Appeals Council's) responsibility, not the responsibility of the Commissioner's counsel on appeal to this Court, to "state with clarity" the grounds for an RFC determination. Stated differently, "linkage" may not be manufactured speculatively by the Commissioner—using "the record as a whole"—on appeal, but rather, must be clearly set forth in the Commissioner's decision. *See, e.g., Durham v. Astrue*, 2010 WL 3825617, *3 (M.D. Ala. Sept. 24, 2010) (rejecting the Commissioner's request to affirm an ALJ's decision because, according to the Commissioner, overall, the decision was "adequately explained and supported by substantial evidence in the record"; holding that affirming that decision would require that the court "ignor[e] what the law requires of the ALJ[; t]he court 'must reverse [the ALJ's decision] when the ALJ has failed to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted'" (quoting *Hanna*, 395 Fed. Appx. at 636 (internal quotation marks omitted))); *see also id.* at *3 n.4 ("In his brief, the Commissioner sets forth the evidence on which the ALJ *could have* relied . . . . There may very well be ample reason, supported by the record, for [the ALJ's ultimate conclusion]. However, because the ALJ did not state his reasons, the court cannot evaluate them for substantial evidentiary support. Here, the court does not hold that the ALJ's ultimate conclusion is unsupportable on the present record; the court holds only that the ALJ did not conduct the analysis that the law requires him to conduct." (emphasis in original)); *Patterson v. Bowen*, 839 F.2d 221, 225 n.1 (4th Cir. 1988) ("We must . . . affirm the ALJ's decision only upon the reasons he gave.").

Court, but not to the extent that such decisions are interpreted to require that substantial and tangible evidence must—in all cases—include an RFC or PCE from a physician" (internal punctuation altered and citation omitted)); *but cf. Coleman v. Barnhart,* 264 F.Supp.2d 1007 (S.D. Ala. 2003).

In this case, the Court finds that the ALJ did not completely link his RFC assessment—that is, a reduced range of light work—to specific evidence in the record bearing upon Taylor's ability to perform the physical, mental, sensory and other requirements of work because he failed to set forth his reasons for finding that "claimant's statements concerning the intensity, persistence and limiting effects of [her] symptoms are not entirely credible" (Tr. 24), as more precisely set out hereinafter.

The Eleventh Circuit has consistently and often set forth the criteria for establishing disability based on testimony about pain and other symptoms. *See, e.g., Wilson v. Barnhart,* 284 F.3d 1219, 1225 (11th Cir. 2002) (citations omitted); *Holt v. Sullivan,* 921 F.2d 1221, 1223 (11th Cir. 1991).

> [T]he claimant must satisfy two parts of a three-part test showing: (1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain.[8] If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Failure to articulate reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true.

*Wilson, supra,* at 1225 (internal citations omitted; footnote added).

---

[8] "Medical history and objective medical evidence such as evidence of muscle atrophy, reduced joint motion, muscle spasm, sensory and motor disruption, are usually reliable indicators from which to draw a reasonable conclusion about the intensity and persistence of pain and the effect such pain may have on the individual's work capacity." SSR 88-13.

"20 C.F.R. § 404.1529 provides that once such an impairment is established, all evidence about the intensity, persistence, and functionally limiting effects of pain or other symptoms *must* be considered in addition to the medical signs and laboratory findings in deciding the issue of disability." *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995) (emphasis supplied). In other words, once the issue becomes one of credibility and, as set forth in SSR 96-7p, in recognition of the fact that a claimant's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by objective medical evidence alone, the adjudicator (ALJ) in assessing credibility must consider in addition to the objective medical evidence the other factors/evidence set forth in 20 C.F.R. § 404.1529(c). More specifically, "[w]hen evaluating a claimant's subjective symptoms, the ALJ *must* consider the following factors: (i) the claimant's 'daily activities; (ii) the location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (iii) [p]recipitating and aggravating factors; (iv) the type, dosage, effectiveness, and side effects of any medication the [claimant took] to alleviate pain or other symptoms; (v) treatment, other than medication, [the claimant] received for relief . . . of pain or other symptoms; and (vi) any measures the claimant personally used to relieve pain or other symptoms.'" *Leiter v. Commissioner of Social Security Administration*, 377 Fed.Appx. 944, 947 (11th Cir. May 6, 2010) (emphasis supplied), quoting 20 C.F.R. § 404.1529(c)(3); *see also* SSR 96-7p ("In recognition of the fact that an individual's symptoms can sometimes suggest a greater level of severity of impairment than can be shown by the objective medical evidence alone, 20 CFR 404.1529(c) and 416.929(c) describe the kinds of evidence . . . that the adjudicator *must* consider in addition to the objective medical evidence when assessing the credibility of an individual's statements[.]" (emphasis supplied)).

In this case, the ALJ clearly recognized that plaintiff's impairments meet the pain standard (*see* Tr. 24 ("[T]he undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms[.]")) yet found that her subjective pain complaints were not entirely credible (*id*. ("[T]he claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision.")).[9] However, the ALJ, in making his credibility finding, *see Foote, supra,* at 1561, considered only the objective medical evidence of record but did not consider the other factors/evidence set forth in 20 C.F.R. § 404.1529(c) (*see* Tr. 25-26). This was error. In other words, in this decidedly "pain" case,[10] *Foote, supra,* at 1562 ("'[W]here proof of a disability is based upon subjective evidence and a credibility determination is, therefore, a critical factor in the [Commissioner]'s decision, the ALJ must either explicitly discredit such testimony or the implication must be so clear as to amount to a specific credibility finding.'"), the ALJ's adverse credibility determination is not supported by substantial evidence because he failed to utilize any of the many reasons at his disposal for finding Taylor's testimony not fully credible, including daily activities, *see Wheeler v.* Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986) (noting activities such as caring for personal needs, visiting a sick aunt, helping his spouse around the house, and carrying out the garbage supported the ALJ's finding that the claimant did

---

[9] If this "canned" and conclusory analysis was allowed to suffice on its own, the requirement that ALJs account for the "other factors" set forth in 20 C.F.R. § 404.1529(c)(3) would be eviserated. Indeed, sanctioning such approach would effectively allow ALJs to reject a claimant's testimony of pain (and other symptoms) without articulating "***explicit*** and ***adequate*** reasons for doing so." *See Wilson, supra,* 284 F.3d at 1225 (emphasis supplied).

[10] (*Compare, e.g.,* Tr. 22 (finding as a severe impairment, chronic pain) *with, e.g.,* Tr. 372 (bilateral knee pain assessed); Tr. 481, 485 & 494 (chronic pain diagnosed); and Tr. 488 (for knee pain, plaintiff was given an injection of Toradol and Norflex).)

not suffer disabling pain),[11] sporadic use of narcotic pain medication, *see Davis v. Astrue*, 2011 WL 3875620, *8 (M.D. Ala. Aug. 31, 2011) ("The court finds the ALJ's decision to discount plaintiff's testimony to be minimally adequate. He stated at least one specific reason—*i.e.*, that plaintiff's 'use of medication does not suggest the presence of any impairment(s) which is more limiting than found in this decision.' The ALJ's failure to cite the evidence in support of this stated reason within his credibility analysis is not the best practice, and it needlessly complicates review. However, it is apparent from the decision as a whole that the ALJ here refers to plaintiff's sporadic use of narcotic pain medication, described fully within the ALJ's summary of the evidence and supported by evidence of record. Accordingly, the court finds without merit plaintiff's contention that the ALJ's credibility determination is flawed as to his testimony of disabling pain." (internal citations and footnote omitted)), and the like.[12]

Because the ALJ's credibility determination is flawed, this Court is unable to find that the ALJ provided the linkage necessary to substantiate his RFC determination. Accordingly, this cause is due to be remanded to the Commissioner of Social Security for further proceedings not inconsistent with this decision.

---

[11] Although the ALJ mentioned Taylor's daily activities, as plaintiff described them at the hearing (*see* Tr. 24) and to Dr. Hinton (Tr. 26), he simply nowhere indicated that such activities were indicative of the fact that plaintiff does not suffer from disabling pain (*see id.* at 24 & 26).

[12] Such credibility determination should take the shape of that noted in *Leiter, supra*, 377 Fed. Appx. at 948 (daily activities), or *Witherspoon v. Astrue*, CA 12-0220-C, Doc. 21, at 7-9 (no pain medication, etc.). The need to perform such analysis is particularly apparent where, as here, the vocational expert testified that an individual who, because of pain, could not maintain attention, concentration, and pace for periods of at least two hours, could not perform her past relevant work. (*See* Tr. 64.)

## CONCLUSION

In light of the foregoing, it is **ORDERED** that the decision of the Commissioner of Social Security denying plaintiff benefits be reversed and remanded pursuant to sentence four of 42 U.S.C. § 405(g), *see Melkonyan v. Sullivan*, 501 U.S. 89, 111 S.Ct. 2157, 115 L.Ed.2d 78 (1991), for further proceedings not inconsistent with this decision. The remand pursuant to sentence four of § 405(g) makes the plaintiff a prevailing party for purposes of the Equal Access to Justice Act, 28 U.S.C. § 2412, *Shalala v. Schaefer*, 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993), and terminates this Court's jurisdiction over this matter.

**DONE** and **ORDERED** this the 14th day of March, 2017.

s/WILLIAM E. CASSADY
**UNITED STATES MAGISTRATE JUDGE**